**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JUDY MONTOYA,

    Plaintiff,

v.                                                                 Civ. No. 14-1148 SCY

CAROLYN W. COLVIN,
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Judy Montoya's Motion to Reverse and Remand the Social Security Administration (SSA) Commissioner's decision to deny Plaintiff disability benefits. ECF No. 21. Having considered the parties' briefing, the administrative record, the relevant law, and being otherwise fully advised, the Court determines that the administrative law judge ("ALJ") did not err in her step-two assessment of the severity of Plaintiff's impairments. The Court will therefore **DENY** Plaintiff's Motion to Reverse and Remand as further discussed below.

**I.    BACKGROUND**

Plaintiff Judy Montoya is a 44-year-old woman who applied for supplemental security income on the basis of posttraumatic stress disorder ("PTSD"), depression, and anxiety. ECF No. 17, Administrative Record ("AR") at 23, 63-64. She alleged a disability onset date of July 23, 2011. AR 65.

Plaintiff reported that she is depressed and spends most of her time in bed. AR 187. Plaintiff stated that she takes care of her three children and that she is able to prepare her own

1

meals, clean house and do laundry, and go shopping. AR 187-192. She also reported that her illnesses have affected her memory as well as her ability to complete tasks, concentrate, understand, and get along with others. AR 192. Plaintiff's mother reported that Plaintiff stays in bed most of the time due to her depression and that Plaintiff's illnesses have affected her ability to complete tasks and get along with others. AR 197, AR 202.

At the hearing before the ALJ, Plaintiff reported that she and her three minor children were living with her adult son and his family. AR 48. Plaintiff testified that she was last employed as a waitress at Village Inn for a period of approximately one year in May 2010. AR 41. Prior to that, she worked as a lab technician at Eyemart Express for one year. AR 42, AR 347. Plaintiff reported a history of methamphetamine abuse following the death of her son in 1993 until 1999 and two felony convictions for drug possession. AR 43-45. She also reported marijuana use, most recently 130 days prior to the hearing, and indicated that she attends Narcotics Anonymous meetings once a week. AR 45.

### A. Plaintiff's Medical History

In her initial application, Plaintiff applied for disability benefits on the basis of mental impairments: posttraumatic stress disorder ("PTSD"), depression, and anxiety. AR 23, 63-64. Prior to her hearing with the ALJ, however, Plaintiff also alleged that she was disabled due to her contraction of methicillin-resistant Staphylococcus aureus ("MRSA"). *See* AR 70, AR 74-75 (noting that Plaintiff did not allege any physical impairments in initial application or on reconsideration); AR 350 (Plaintiff's submission of MRSA treatment records prior to hearing). The ALJ found that Plaintiff had the following medically determinable impairments: PTSD, polysubstance dependence in partial remission, depressive disorder, and MRSA. AR 25.

*i. Mental Impairments*

Plaintiff saw her treating physician, Dr. Roland Sanchez, MD, for several visits in 2010 to 2012, during which she received treatment for depression and anxiety. AR 286-292, AR 319-320, AR 323. On June 22, 2011, social worker Cheryl Joslin-Atkins, LMSW, completed a behaviorial health assessment on Plaintiff. AR 296-302. Plaintiff reported anxiety, crying spells, and difficulty with sleeping. AR 296. The social worker assessed Plaintiff with a GAF of 52[1] and diagnosed her with major depression, PTSD, and anxiety disorder. AR 301-302.

On August 4, 2011, Plaintiff saw a nurse practitioner for a psychiatric evaluation. AR 304. Plaintiff reported difficulty falling asleep, nightmares, low energy, depression, poor concentration, anxiety, and panic attacks. AR 304. Plaintiff also reported two prior suicide attempts – the first in 1992 and the second in 1995 after her son's death. *Id.* The nurse practitioner also diagnosed Plaintiff with depression and anxiety, continued the prescriptions for these disorders, and assessed a GAF score of 59. AR 308.

On September 3, 2011, agency consultant Dr. Thomas Clark, PhD, completed a disability determination evaluation of Plaintiff. AR 63-68. Dr. Clark determined that Plaintiff had mild difficulties in maintaining social functioning, concentration, and persistence or pace. AR 66. Dr. Clark also found that Plaintiff had no restrictions in performing activities of daily living and no repeated episodes of decompensation. AR 67. Dr. Clark concluded that Plaintiff's mental impairments were non-severe. AR 66-67. Dr. Clark's assessment was affirmed by agency consultant Dr. Cathy Simutis, PhD. AR 74.

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). It is used by clinicians to report an individual's overall level of functioning. *Id.* A score between fifty-one and sixty reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Plaintiff's mental health providers, who evaluated Plaintiff prior to 2013, used this scoring method.

On January 26, 2012, Tony Kreuch, Psy.D., completed a consultative medical examination of Plaintiff. AR 310. Plaintiff self-reported a good range for daily activities and ability to relate to others; fair to good range for social functioning; and a fair ability to handle stressful situations. AR 310-11. Dr. Kreuch diagnosed Plaintiff with PTSD and depressive disorder NOS. AR 311. He assessed a GAF score of 60 and determined that Plaintiff had fair to good ability to interact with the general public and coworkers; a fair to good ability to concentrate, persist at tasks of basic work, and adapt to changes in the workplace; and a good ability to understand and remember basic instructions. AR 311-12.

On November 15, 2012, counselor Tamara Turcotte, LPCC, conducted an adult psychological assessment of Plaintiff and determined that she had a GAF of 45.[2] AR 342.

    ii. *Plaintiff's Physical Impairments (MRSA)*

Plaintiff testified at the January 23, 2013 hearing before the ALJ that she caught MRSA while in Farmington and that she had three MRSA outbreaks in the year prior to the hearing. AR 47. She stated that each of these outbreaks was mainly in the genital areas and was treated with bactrim. *Id.* Plaintiff indicated that her last outbreak was three months prior to the hearing, that she usually gets an outbreak every three months, and that she did not have an ongoing MRSA outbreak at the time of the hearing. AR 48, AR 54. Plaintiff also testified that she cannot physically function and is often not able to walk when she has a MRSA outbreak. AR 46. When a MRSA outbreak occurs, Plaintiff explained that she goes to the "ER and they have to cut me open, they have to drain it, and pack it with medicated gauze." AR 49. She then "return[s] in 24 to 48 hours for them to take the packing out and put packing back in" and this has to be done

---

[2] A GAF score between forty-one and fifty indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005).

"generally . . . three times before [she] can let the wound close up." *Id.* Plaintiff also testified that the MRSA outbreaks last "anywhere from a week to a month" depending on how the wound heals. AR 50.

The medical evidence in the record regarding MRSA is as follows: On April 15, 2012, Plaintiff went to the emergency department for pain due to an abscess in the right groin area. AR 405-406. She stated that the right groin abscess started five days prior and that she had previously received treatment for an MRSA infection in her left groin. AR 407. She told providers that she had a history of frequent MRSA infections and that she had a standing prescription for bactrim. *Id.* The right groin abscess was drained and packed with gauze. AR 408. At discharge, Plaintiff was prescribed bactrim and instructed to see her primary care provider in 24 to 48 hours for "wound recheck and packaging as needed." AR 408, AR 417.

On May 24, 2012, Plaintiff saw her primary physician, Dr. Sanchez, for pain due to having a piece of gauze stuck in an area where she had a MRSA infection. AR 314. On September 23, 2012, Plaintiff sought medical treatment for a cat bite. AR 398. In addition to receiving treatment for the cat bite, she was diagnosed with cellulitis and prescribed bactrim. AR 401 - 402.

On October 5, 2012, Plaintiff went to the emergency department to receive treatment for an abscess on her left inner thigh that she told providers was due to a MRSA infection. AR 351. The abscess was drained and packed with nugauze. AR 370. When discharged, she was instructed that the dressing "will need to be changed 3 or more times during the day," to "return to the E.R. daily for packing cheanges [sic]", and to follow up with her primary care provider in 3-5 days. AR 365, AR 373-74.

Finally, at the hearing, a vocational expert testified -- in response to a hypothetical -- that a person who misses five to fifteen days of work every three months would be terminated from

his/her job for repeated absences unless a prior arrangement was made with an employer. AR 58. After a discussion with Plaintiff and her counsel regarding the medical evidence concerning Plaintiff's physical and work limitations during a MRSA outbreak (AR 58 - 61), the ALJ left the record open for two weeks to allow Plaintiff to provide supplementation regarding her MRSA outbreaks. AR 61. Two days later, Plaintiff's treating physician, Dr. Sanchez, provided a letter stating that: "As her outbreaks of MRSA continue, I found [Plaintiff] cannot return to her assigned duty at work for approximately one week due to the infection which may be spread." AR 457.

### B. Procedural History

On July 27, 2011, Plaintiff filed an application for supplemental security income. AR 23. After her claim was denied on initial review and upon reconsideration, her case was set for a hearing in front of an ALJ on January 23, 2013. *Id.* On June 19, 2013, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* Specifically, at step-two of the five-step sequential evaluation process, the ALJ concluded that Plaintiff does not have a severe impairment or combination of impairments because her activities of daily living are not as limited as one would expect and Plaintiff suffers no more than mild limitations in the four functional areas identified in section 12.00C of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 25-30.

Plaintiff appealed this decision to the Social Security Appeals Council and the Appeals Council denied the request for review. AR11. This appeal followed. ECF No. 21.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." 20 C.F.R. § 416.920(a)(4). If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 416.920(a).

**B. Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1271 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

**III.   ANALYSIS**

Plaintiff challenges the ALJ's step-two finding that Plaintiff does not suffer from any severe impairments. Plaintiff has the burden of proof at step-two to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137, 146-154 (1987). This determination "is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Although Plaintiff "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step-two is a de minimis showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (internal citation omitted). A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. Social Security Ruling ("SSR") 85-28 requires that the evidence "clearly establish[]" that the impairment is *not* severe.[3] The ruling reads, in pertinent part:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

SSR 85-28, 1985 WL 56856, at *3.[4]

---

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[4] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b) [416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28, 1985 WL 56856 at *3; *see also Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004).

Various aspects of the law governing review of an ALJ's decision at step-two are seemingly in tension. Favoring the Commissioner is the deferential standard of review—i.e., that the Court is not allowed to reweigh evidence and can only overturn an ALJ's decision if it is not supported by substantial evidence—and the fact that Plaintiff carries the burden of proof at this stage. Favoring Plaintiff is the requirement that severity must be found unless "such a finding is not clearly established by medical evidence," SSR 85-28, and that Plaintiff must only make a *de minimis* showing of impairment at this stage. Both parties, however, agree that the analysis of Plaintiff's claimed mental impairments at step-two is governed by 20 C.F.R. § 416.920a. *See* ECF No. 22 at 21-22, ECF No. 27 at 10. 20 C.F.R. § 416.920a states in relevant part:

> (c) Rating the degree of functional limitation[:]
>
> . . . .
>
>> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>>
>> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.
>
> (d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s)[:]
>
>> (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 416.921).

The Court considers Plaintiff's arguments on appeal concerning mental impairments with reference to 20 C.F.R. § 416.920a. The Court then considers her physical impairment, MRSA.

### 1. Plaintiff's Mental Impairments

In this case, reviewing the four functional areas set forth in 20 C.F.R. § 416.920a in combination with the ALJ's findings and the record as a whole, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's claimed mental impairment is non-severe.[5]

Plaintiff first argues that the ALJ's finding that Plaintiff did not have any limitations in her activities of daily living is inconsistent with: (1) the ALJ's recognition that Plaintiff suffers from nightmares, anxiety, and frequent crying spells; (2) Plaintiff's assertion that her illnesses affect her memory and ability to complete tasks; (3) evidence that Plaintiff stays in bed much of the day due to depression; and (4) notations from her doctors that she suffered from panic attacks and low energy. ECF No. 22 at 12. Plaintiff, however, fails to support her argument with medical opinions to support a conclusion that she is more than mildly limited in this area.[6] By failing to show that she has more than a mild impairment in this area, Plaintiff has failed to demonstrate that limitations to her activities of daily living support a finding of severe impairment at step-two. *See* 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe.").

---

[5] Plaintiff does not assert that she has had episodes of decompensation and so the Court need not address the fourth functional area.

[6] While Plaintiff argues that her GAF scores are inconsistent with the ALJ's determination that she only has a mild social impairment, Plaintiff does not argue that her GAF scores are inconsistent with the ALJ's finding that she has no limitations with regard to her activities of daily living and mild limitations in concentration, persistence and pace. Nonetheless, the Court notes that even the counselor who assessed Plaintiff with a GAF score of 45 documented that Plaintiff reported no concerns with activities of daily living and concluded that Plaintiff needed no assistance with various activities of daily living. AR 339.

In contrast, the ALJ summarized Plaintiff's mental health history and the opinions of several doctors who supported the ALJ's conclusion that Plaintiff has no limitations in the area of daily living activities. AR 28; *see also* ECF No. 27 at 11 (setting forth opinions of doctors on the record). The ALJ further cited to numerous examples of Plaintiff's activities of daily living that supported the ALJ's finding that Plaintiff has no limitation in this area. AR 29. The evidence to which the ALJ cited constitutes substantial evidence to support the ALJ's conclusion that Plaintiff has no limitations in her activities of daily living.

Plaintiff next argues that her GAF scores demonstrate that she has more than mild impairment in social functioning. ECF No. 22 at 12. In so doing, however, Plaintiff also acknowledges, as she must, that "[s]tanding alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work" because a claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere. ECF No. 22 at 12 (quoting *Lee v. Barnhart*, 117 Fed. App'x. 674, 678 (10th Cir. 2004) (unpublished)). In this case, the ALJ recognized Plaintiff's GAF scores but gave them little weight. In considering Plaintiff's GAF scores together with the record as a whole, the Court finds that substantial evidence exists to support the ALJ's conclusion that Plaintiff had only mild impairment in social functioning.

Plaintiff at various times had GAF scores of 52, 59, 60, and 45. AR 302, 308, 311, 342. While a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work, a "GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee*, 117 Fed. App'x. at 678. Just how much weight an ALJ should give to GAF scores has been subject to significant debate. *See Drummond v. Astrue*, 895 F. Supp. 2d 1117, 1129-32 (D. Kan. 2012) (analyzing cases in light of a claimant's argument that the ALJ

committed error by failing to consider GAF scores and Commissioner's argument that an ALJ is not required to discuss or rely on GAF scores); *see also Rivera v. Astrue*, 9 F. Supp. 3d 495, 501-07 (E.D. Penn. 2014) (concluding that ALJ's failure to discuss GAF scores required remand). In *Keyes-Zachary v. Astrue*, by expressing "concern" with GAF scores of 46 and 50, the Tenth Circuit indicated that GAF scores should be considered. *See Keyes-Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012). If GAF scores come from a treating source, they carry more weight. *See id.* at 1164 (GAF scored prepared by acceptable medical source trumps score prepared by a counselor). If those scores are not supported by notes or a narrative, their weight is significantly reduced. *See Drummond*, 895 F. Supp. 2d at 1132.

Here, not only do notes from the counselor who assessed Plaintiff with a GAF score of 45 fail to support that score, they flatly contradict them. Despite assessing Plaintiff with a GAF score of 45, the report of Tamara Turcotte, LPCC, states that Plaintiff "is friendly and charismatic . . . works well with others, is active and energetic, cares about others . . . has positive peers, social Skils (sic), has no conflict in school environment, has no conflict in work environment, has no dificulty (sic) making or keeping friends." AR 330. The report further notes that Plaintiff stated she "is good at taking care of her children, would be a good worker as a legal secretary . . ." (AR 330), "has good people skills . . . feels confident in her abilities [but] feels that her depression and anxiety gets in the way of looking for work." AR 336-37. Further, agency consultant Thomas Clark, Ph.D., found that Plaintiff only had mild difficulties with social functioning and agency consultant Cathy Simutis, Ph.D., affirmed this finding. AR 66, AR 74. Similarly, Dr. Kreuch assessed Plaintiff's ability to relate to others as good and her ability to interact with the general public and co-workers as "[f]air to good." AR 311-12. If the record did not contain information and findings that undermine Plaintiff's GAF scores, Plaintiff's GAF

scores might require remand. However, the record as a whole, including narratives in reports that undermine the GAF scores in those same reports, supports the ALJ's decision to give those scores little weight. *See Bowman v. Astrue*, 511 F.3d 1270, 1271 (10th Cir. 2008) (the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."). Thus, the Court concludes that, even considering Plaintiff's GAF scores, substantial evidence exists to support the ALJ's finding that Plaintiff has only a mild limitation in social functioning.

  Plaintiff further argues that both she and a family member indicated at the administrative hearing that she had difficulty getting along with others. This testimony is inconsistent with the information set forth above that Plaintiff provided medical professionals. Further, these self-serving statements made at the administrative hearing, even combined with Plaintiff's GAF scores on the record, are insufficient to overcome the substantial evidence that supports the ALJ's determination that Plaintiff suffers from only a mild limitation in social functioning.

  With regard to Plaintiff's concentration, persistence and pace, Plaintiff points to her testimony at the administrative hearing, confirmed by her mother, that her illnesses affect her memory, ability to complete tasks, concentration and understanding. ECF No. 22 at 13. She also points to her statement at the June 22, 2011 Behavioral Health Assessment that she has suffered from sleep disruption, racing thoughts, crying spells, and has always had issues with depression that necessitated the need for medication. ECF No. 22 at 13. The ALJ explicitly gave the statements of Plaintiff's mother little weight finding that, "[w]hile they have been presented with good intention, the undersigned must determine the issue of disability based on the credible medical evidence and the degree to which the claimant's subjective complaints are consistent with the objective medical evidence." AR 29. Soon thereafter, the ALJ addressed Plaintiff's concentration, persistence and pace, and, by finding that she had only mild limitations, implicitly

found her hearing testimony not credible. *See* AR 29; *Casias*, 933 F.2d at 801 (noting that the ALJ is the "individual optimally positioned to observe and assess witness credibility").

Moreover, it appears that no medical professional has opined that Plaintiff has greater than a mild limitation in concentration, persistence and pace. As the Commissioner notes, Plaintiff's memory, attention, and concentration were all assessed as normal in an August 2011 psychiatric evaluation. ECF No. 27 at 12 (citing AR 307). In addition, Dr. Kreuch found that Plaintiff's ability to understand and remember instructions was good and that her ability to concentrate and persist was in the range of fair to good. ECF No. 27 at 12 (citing AR 312). Thus, substantial evidence exists to support the ALJ's determination that Plaintiff had only mild limitations in concentration, persistence and pace.

Through 20 C.F.R. § 416.920a, the Social Security Administration has set out a clear analytical framework to assist in determining whether a claimant's mental impairments are severe enough to get past step-two of the sequential evaluation process. In developing this analytical framework, the Social Security Administration accounted for the low *de minimis* showing a claimant must make at step-two. After all, an ALJ who applies this framework generally must find that a claimant has a *severe* mental impairment for purposes of step-two if the claimant has a *moderate* limitation *in any one* of the first three functional areas. Here, the Court concludes that the ALJ appropriately relied on medical opinions and evidence of Plaintiff's activities to determine that Plaintiff's limitations in each of the areas of daily living activities, social functioning, and concentration was mild or less. As long as the ALJ's conclusions are reasonable and consistent with the evidence, the Court must affirm the ALJ's decision. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994) (the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might

accept as adequate to support a conclusion). The Court determines that the findings of the ALJ regarding the nature and extent of Plaintiff's mental impairments and limitations are reasonable and supported by substantial evidence.

## 2. Plaintiff's MRSA Outbreaks

Plaintiff argues that the ALJ erred in finding at step-two of the sequential analysis that Plaintiff's history of MRSA outbreaks was a non-severe impairment. The ALJ based her determination on findings that (1) Plaintiff's MRSA infections were always resolved with proper treatment; (2) despite the MRSA outbreaks, Plaintiff engaged in daily living activity that were "not limited to the extent one would expect, given her complaints of disabling symptoms and limitations" (AR 26); (3) agency experts opined that Plaintiff had no exertional limitations due to her impairments; (4) Plaintiff's treating physician, Dr. Sanchez, opined that Plaintiff was incapable of returning to work for a one-week period in January 2013 due to a MRSA outbreak (AR 457), and (5) there was no record evidence establishing that Plaintiff's MRSA lasted or was expected to last continuously for the requisite twelve month period. AR 26-27.

Plaintiff argues that the ALJ erred in her assessment that the MRSA was a non-severe impairment because there is substantial evidence establishing that Plaintiff's MRSA satisfied the twelve-month durational requirement. ECF No. 22 at 9; *see* 20 C.F.R. § 404.1509 (providing that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months"). The Court finds that the ALJ did not err in her assessment of the durational requirement. Although medical evidence in the record established that Plaintiff had three MRSA-related incidents in the year prior to the hearing,[7] the Court's review of these records confirms

---

[7] Although Plaintiff told a provider during a doctor's visit in November 2012 that she had a MRSA infection in 2006 while she was in Farmington (AR 238), there are no medical records related to a 2006 MRSA outbreak. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (establishing the existence of a medically determinable impairment requires both objective medical evidence and

16

the ALJ's determination that there was insufficient evidence to establish that the MRSA outbreaks could be expected to recur in the future, well beyond the twelve month durational requirement. Although Plaintiff testified that she gets a MRSA outbreak once every three months (AR 48), there is no medical evidence substantiating Plaintiff's testimony or otherwise establishing a history of recurrent MRSA outbreaks that occurred over a period of time that meets the durational requirement.

Furthermore, as the Tenth Circuit stated in *Hinkle v. Apfel*, 125 F.3d 1349, 1352 (10th Cir. 1997), a claimant at step-two "must show more than the mere presence of a condition or ailment." The ALJ must look at the claimant's impairment and "determine[] the impact the impairment would have on [the claimant's] ability to work." *Id.* Here, although Plaintiff established that she has MRSA, the ALJ expressed concern at the hearing regarding the lack of medical evidence in the record concerning the impact of a MRSA outbreak on Plaintiff's ability to work. AR 58 - AR 62. Plaintiff acknowledged the lack of evidence -- beyond her own self-serving testimony that she was unable to work, walk, or physically function during a MRSA outbreak -- and proceeded to supplement the record with Dr. Sanchez's letter. *Id.* However, as the ALJ pointed out in her decision, the only limitation Dr. Sanchez provided was that Plaintiff could not return to work for one week following an infection[8] due to the risk of spreading it to others. AR 457; AR 27. Dr. Sanchez did not offer an opinion as to how MRSA outbreaks would impact Plaintiff's ability to perform work on a regular or ongoing basis.

As a final matter, Dr. Sanchez did not substantiate Plaintiff's testimony regarding the degree of functional limitations that she alleges accompanied a MRSA outbreak (i.e., that she

---

subjective symptoms; a treating physician's restatements of a patient's own "perception or description" of her problems,alone, are insufficient).

[8] It is not clear from the wording of Dr. Sanchez's letter whether he is referring to an ongoing MRSA infection or to any future MRSA infections that Plaintiff could have.

found she could not physically function and was unable to walk). *See* ECF No. 22 at 8. This further supports the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her limitations during a MRSA outbreak were not credible in light of the other evidence in the record.

Based on the foregoing, the Court concludes that the ALJ did not err in her step-two assessment that Plaintiff's MRSA was not a severe impairment.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence supports the ALJ's step-two determination that Plaintiff did not have a severe impairment or combination of impairments. Accordingly, Plaintiff's Motion to Reverse and Remand (ECF No. 21) is hereby **denied**. As a result, the decision of the Commissioner denying Plaintiff benefits is **AFFIRMED**.

_____
UNITED STATES MAGISTRATE JUDGE